This is Washington v. Ellis, 23-2552. Good morning, Ms. Brumfield? Brumfield. Good morning. Good morning, Your Honors, and may it please the court. My name is Yolanda Brumfield, and I am pro bono counsel for plaintiff appellant Randy Washington. I'd like to reserve two minutes of rebuttal time, please. Sure. Thank you. So, Your Honors, this is a prime example of a case that does not fall under the limited exception articulated by our Supreme Court in Scott v. Harris. I won't belabor it too much, but in Scott, as Your Honors know, the Supreme Court held that when opposing parties tell two different stories, one of which is blatantly contradicted, and I'm going to come back to that blatantly contradicted standard because that's an onerous one. By the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. So, in this case, Your Honors, the surveillance video that formed the basis for the district court's decision does not blatantly contradict Mr. Washington's version of the events on June 29, 2017, and far from it. What about the timing of the, we'll call it the takedown for lack of a better word. Is there an issue there as to his version versus what we see on the video? So, in our opinion, we don't believe that that timing issue really is dispositive of anything because it was a sequence of events. And what really matters and what really needs to go before a jury is the reasonableness of that force. So, even if it was a five-second versus three-second takedown, there's a lot that went on after that that we cannot see because, of course, the officers are obstructing the view of Mr. Washington. It's not that they're on the ground. Correct. That's right. Yes. I'll continue. So, there is one thing I do want to acknowledge up front, though, Your Honors, and this is one fact that is not in dispute. Mr. Washington struck his attorney, and that was wrong. And that is something that Mr. Washington has expressed remorse about to me throughout my time as his pro bono counsel. But this case really is about what happened after he struck his attorney. And as Your Honors know, the Constitution protects Mr. Washington against excessive force. And whether these events amount to excessive force is ultimately for a jury to decide. Let me ask you something. So, focusing on the Whitley factors, right, you need the need for the application of force, the relationship between the need and the amount of force, the extent of the injury inflicted, the extent of the threat to the safety of the staff and inmates, as well as reasonably perceived by responsible officers and any efforts made to temper the severity of the force, I'm trying to understand here, even if we accept Mr. Washington's version of the events, which of the Whitley factors are not in the government's favor? So, it is our opinion that none of these really are in their favor because this is such a disputed set of events. But even if we accept Mr. Washington's set of events, I'm trying to understand how this meets the malicious and sadistic standard. So, there are a few, I guess, facts that we can talk about that actually favor us. I mean, the video has no audio. Mr. Washington testified that he heard one of the officers say, take him down, and he also testified in his deposition that the officer said, take him down, and aggressively did so to inflict pain because of what he did as retaliation for Washington striking his attorney. And while I do understand your honor's point, I think here we have two very important facts that because the video is obscured and because the video has no audio, it really should go to a jury to determine that malicious and seditious factor. What about the video after he goes back into the cell block? Did his hand appear compromised at any point in that interval shortly after the incident in the cell block? Were he standing by the door, looking out, not indicating any problem with his wrist at all? So, when he was in the hallway, your honor, or in the cell? When he's standing, he's inside, he's looking out the window and his hands behind him, not indicating that he's in any pain or discomfort or anything. So, a few things. There are things in the record where Mr. Washington testified he told them about his hand. And keep in mind, Mr. Washington also testified, and we cannot clearly see this in the video, that they, I guess they crushed his hand around as they were putting the handcuffs around his hand. So, while it appears, I guess that you could say that, you could also look at the video and see that he's grimacing a bit. And he's flexing his hand. So, that could actually go against that as well. I thought one of the things you were going to say, not just obscured, but that the video was particularly grainy. Absolutely. But you're not making that argument. I am making that argument as well, your honor. But I did want to provide some alternative bases as well. But yes, that video was extremely grainy. And even though we are presented with two different perspectives, they're equally as grainy. You really cannot see what happens once they perform the initial takedown and they're on Mr. Washington for several minutes. You really cannot see what happens. Mr. Washington testified that they maliciously, of course, crushed his hand. And there are several officers who were obstructing that view, in addition to that grainy video. Let me ask you about your second bucket, so to speak, of defendants in this case, and that would be the prison personnel. Are you pursuing the deliberate indifference Eighth Amendment claims against the prison medical personnel? Yes, that would be. Yeah, that's a separate claim. Yes. So why don't you address that for us? How are they deliberately indifferent? So, OK, Mr. Washington provided multiple times, like a lot of different, I guess. Sorry, I'm like on the excessive force when you go to that bucket. He complained multiple times to these officers and to the medical defendants as well. And he knew it was broken. He testified that his hand was like the size of a golf ball, like it was really huge. It was hurting. He continuously went to the medical staff to tell them, like, hey, I have a really painful wrist. So after that, he actually had his mother contact the prison staff to let them know that he had this broken wrist. And he needed pins, Your Honor, to, you know, to get the surgery. So, I mean, there's plenty of evidence in the record that show that he actually did continuously complain, go to the doctor and nothing was done. I apologize for the question. I was just called to my attention with my colleague. We limited this argument to excessive force. It's OK. I just had to switch my brain. So to continue, I also want to emphasize the district court's own opinion. The district court emphasized a multitude of these genuine disputed facts. The district court's reasoning, including its application of Scott, makes it clear that the rigorous standard of blatantly contradicts cannot be met here. This comes from the district court's opinion, Your Honors. You cannot clearly see plaintiff's hands or handcuffs. And it is totally not it is not totally clear if an officer's knee landed on plaintiff's hand at any point or if an officer tightened plaintiff's handcuffs in the hallway. But what happened to Mr. Washington's hand, Your Honors, and to the handcuffs is the very basis of this claim. Furthermore, you cannot see what's happening, as Your Honors also pointed out. You cannot see what's happening on the ground as the video is grainy and there are other officers obstructing the view. The district court also noted while the video does not appear to show officers twisting or tightening plaintiff's handcuffs, it does not clearly show that they did not. This clearly flips the exception set forth in Scott, and might I add, a limited exception in Scott, on its head and puts the burden on the non-movement to disprove alternative accounts. In the hallway, the video also supports Randy's version of the events. And this goes to, I think Your Honor was asking about what happened when he got out of the courtroom. He's pushed into the wall and there's frequent communication between Mr. Washington and the officers, but we don't really know what's said because there's no sound. And then third, the district court also said this is, there's no audio on the video recording, so it is unclear if plaintiff told any of the officers about an injury to his hand. Again, Mr. Washington says he did, and the video indicates that there were numerous verbal exchanges, but we can't confirm what was said. And in the holding cell, he is grimacing. In our opinion, we do, as watching the video, we see he is grimacing and he is flexing his hand and looking down at his injured hand, clearly injured hand. So, yeah, for the foregoing reasons, the district court misapplied the summary judgment standard in this case. Again, that blatantly contradict standard is an onerous one, and it is clear that the video does not meet that high standard. And I just do want to point out as well, Your Honors, that many decisions of this court provide a basis to send this back down, overturn that and send it down to the district court. So we have cases like Patterson, Smith, we have Martin, we have Green, we have Ringos, and we have McDowell. And some of these cases have clearly held that where a videotape or other mechanical depiction does not capture the whole incident or the entire arrest, or where the video or mechanical depiction is susceptible to multiple reasonable interpretations, the limited exception in Scott does not apply. So that is a perfect, this is a case where that exception does not apply. Thank you very much, Counsel. Good morning. Is it Mr. Amantia? Good morning, Your Honors. May it please the Court. My name is Michael Anthony Amantia. I'm an Assistant County Counsel. I represent the County of Mercer in New Jersey, and I'm here representing the myriad of defendants who, for lack of a better phrase, could be grouped into two separate areas. Because of the Court's designation with regard to what it expects to hear from in terms of oral argument today, I will be limiting my comments to those, to address the county sheriff's officers. Sure. Maybe we can pick up where we left off with Ms. Brumfield. The depiction here doesn't capture the whole takedown, arrest. If that's the case, then how can you say that the video blatantly contradicts the statements of Mr. Washington? Because the video does capture what happened at the moment when Mr. Washington viciously attacked his attorney. And the sheriff's officers, in a guarded and measured fashion, went to protect everyone in the courtroom. But also to restrain Mr. Washington. And you may be 100% right, but that seems like an argument to a jury as opposed to an appellate court, because that is a particularly grainy video. One of the things I noticed in Ms. Brumfield's argument was that she argued that we were able to discern whether Mr. Washington was grimacing. And if it's grainy for the county's clients, the county's representatives, then the argument is it's going to be grainy for everyone. And I'm sorry, Judge, that may sound like I'm pointing fingers and going, yeah, yeah, yeah, which is the worst argument to make before this court. Putting aside the grainy position for a moment, we've all looked at this video a number of times. You can't see what's happening on the ground. Let's just go with me. Assume I don't think you can see what's happening on the ground. And so my question to you is, if that's the case and want a motion for summary judgment, why would you say we should still rule in your favor, even assuming the facts, as Mr. Washington alleges them, with respect to what happens on the ground? Because Harris versus Scott tells us that where there is that video. I'm saying assume with me that I can't go there with you. Assume I say I can't see what's happening on the ground. I'm looking on the ground. I cannot see what's happening on the ground. I can't see Mr. Washington's hands. I can't see if somebody's knee goes there. I've looked at both angles. I can't see that. My question for you is, what happens next? Does that mean that Mr. Washington wins or is your argument no, Mr. Washington still loses? Because even accepting the facts as he argues them, here's why he loses. He still loses because the force used was not excessive. It was measured. It was calculated. It met a limited situation. How do we know that? Let's assume I agree with my colleague here that you can't see what's happening on the ground, right? So how do we know? How can we come to the determination that it was measured and appropriate if we can't see what was happening? Because, Judge, while we may not have the greatest advantage points from the point on the ground. Assuming you have no vantage point. But you can't dismiss the entire video. Because if you do, then yes, if you dismiss the entire video, which I don't believe you should, then yes, you have a he said, they said situation. And that's classic. That's a genuine issue material fact. And it's not sustainable on summary judgment. I'm sorry. He did have a broken wrist. Eventually, yes. And he had an operation for that. So it happened. Something happened. And I can't tell. Picking up on Judge Montgomery's question. I can't tell what happened from that video that caused the broken wrist. And we're in that case. The default is his allegation. That they use excessive force again, you may win it trial. I'm not I'm not telling you you will or won't. But I can't tell from that video. But there is enough in the video to refute that. That the only reason for the injury was the conduct by the sheriff's officers. What in the video? You said there's enough in the video. Tell us what the whole the whole takedown, if you will, judge those five seconds that we that are alluded to at the minute that he attacks Cormus Lyons and the minute that they they go to restrain him. And base and that brief interlude that takes place down on the ground. But but it is picked up at that point. There's nothing to indicate. There's really no proof to indicate that that that the sheriff's officers did cause the injury. For what we know, quite frankly, the injury may have been caused by the attack itself. But but the plaintiff has to prove that we caused that injury. And I don't believe that the plaintiff has been able to exact exactly. But even but even here on summary judgment with the proofs that were presented, even taken in like the most favorable to the non-moving party, there is no genuine issue of material fact. Which risk was was broken? Do you know, I I think it was I think was the attacking hand. Maybe West opposing counsel, because if it was if it was the left wrist, then and he hit the his counsel with his right hand, that wouldn't fly. But if it was his right wrist, maybe maybe you've got an argument. I for the life of a judge, I right now, I'm not in one of those awful moments where we where we don't have the answer because we're supposed to have. I apologize. No problem. We've all been there. Thank you, counsel. Thank you.  It was his right wrist, by the way. I will make this brief, honest, as I understand this is your last proceeding. OK, so I just want to express something and note something that is really important here. What we're talking about here really is the fact that my client wasn't entitled to the summary judgment standard. Right. So when opposing counsel said that this may have happened or that may have happened, that's a genuine dispute of material fact. And in fact, we're talking about blatantly contradicted. So in my opinion, I believe what opposing counsel was saying actually shows that it didn't blatantly contradict, because there could be all of these what ifs. In fact, like the district court also pointed to these what ifs. So what we're talking about here is that, as I said, Mr. Mr. Washington was not entitled to the correct summary judgment standard. And as your honors know, these reasonable inferences should go in Mr. Washington's favor. Thank you, counsel, and thank you very much to you and your firm for your excellent job on this case. And particularly your pro bono status. It's greatly appreciated.